UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle A. Baker, | Case No. 0:17-cv-02271-SRN-KMM |
| Plaintiff, | |
| v. | |
| CitiMortgage, Inc.; and Christian Bank & Trust, *as Trustee for Securitized Trust Citigroup Mortgage Loan Trust Inc 2015-PS1 Trst, Mortgage Electronic Registration System ("MERS")*; | REPORT AND RECOMMENDATION |
| Defendants. | |

Michelle A. Baker, 16167 Unity Street NW, Andover, MN 55304 plaintiff

Christopher Steven Comstock, Joseph Martin Callaghan, Lucia Nale, and Thomas Vangel Panoff, Mayer Brown LLP; Cameron A. Lallier and Thomas W. Pahl, Foley & Mansfield, PLLP; counsel for defendant CitiMortgage Inc.

This matter is before the Court on the motion to dismiss the Complaint filed by the Defendants CitiMortgage, Inc., and Mortgage Electronic Registration System, Inc. ("MERS"), pursuant to Federal Rule of Civil Procedure 12(b)(6). [Defs.' Mot., ECF No. 20.] In the Complaint, the Plaintiff, Michelle A. Baker, who is appearing *pro se*, asserts several claims against the Defendants based on allegedly wrongful conduct in connection with the securitization of a mortgage loan Ms. Baker received for the purchase of her home. [Compl., ECF No. 1-1.] Based on the facts alleged in the complaint, the Defendants' motion, Ms. Baker's response and on the entire record of this proceeding, the Court concludes that Ms. Baker has failed to state a claim upon which relief can be granted and this action should be dismissed.

1

**I.     Background**

For purposes of considering the Defendants' motion to dismiss, the Court must take all the factual allegations in the Complaint to be true. *Morton v. Becker*, 793 F.3d 185, 187 (8th Cir. 1986). However, the Court is not required to accept as true any wholly conclusory statements, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court may also consider certain matters in the record that are attached to or embraced by the Complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (the court considering a motion to dismiss for failure to state a claim may consider materials that are part of the public record as well as materials necessarily embraced by the pleadings).

**Liberal Construction**

Ms. Baker is representing herself in this litigation, and as such, her pleading is entitled to a liberal construction. Though this does not permit the Court to add factual allegations that are not included, it means that the Court construes the Complaint "in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Understanding that Ms. Baker is not a trained lawyer, the Court notes that the Complaint contains numerous conclusory statements, and sections that are difficult to follow. She also uses a host of legal jargon that lacks a discernible and clear meaning. These features of the Complaint make it challenging to understand the nature of Ms. Baker's claims. And unfortunately, her response to the motion to dismiss [ECF No. 30], restates the same sort of arguments and conclusory statements that characterize the Complaint without engaging with the legal arguments raised by Defendants. Nonetheless, the Court has endeavored to read Ms. Baker's Complaint in the best possible light.

**The Complaint**

Ms. Baker owns real property in Andover, Minnesota. [Compl. ¶ 3.] On March 3, 2010, she obtained financing for the purchase of the home through a loan from CitiMortgage. [*See id.* ¶¶ 11, 15-16, 8(2)[1] (referring to a "Tangible Note" regarding the mortgage loan at issue); *see also id.*, Ex. A ¶ 6; Promissory Note, Defs.' Ex. 1, ECF No. 23-1.] The loan was secured with a mortgage, which made MERS the nominee for CitiMortgage, and Ms. Baker is listed as the mortgagor. [Mortgage, Defs.' Ex. 2, ECF No. 23-2.]

"On October 28, 2011, a Notice of Default was filed with the Anoka County Recorder's Office as ins# 2011.2025249007." [Compl. ¶ 38.] Ms. Baker alleges that the same day "MERS recorded an Assignment of Warranty Deed," which was "signed by Brenda Enriquez as Assistant Secretary for MERS." [*Id.* ¶¶ 34-35.] Ms. Baker asserts that Ms. Enriquez "was not employed by MERS." [*Id.* ¶ 36.] Three Notices of Sale were also recorded on May 9, 2012; July 16, 2015; and November 22, 2016. [*Id.* ¶ 39.]

Ms. Baker makes several allegations concerning 26 U.S.C. § 1031. She alleges that she "was issued an Uncertificated Security to execute in the capacity of (Accommodation Party) to a Tangible Note Bill of Exchange on March 3, 2010 regarding a purported loan to (Accommodated Party) CITIMORTGAGE, INC for $154,849.00." [Compl. ¶ 29.] CitiMortgage, she asserts, "is an account debtor Accommodated Party to a 26 U.S. Code § 1031 – Exchange of property held for productive use or investment."[2] [*Id.* ¶ 30.] As part of this exchange, CitiMortgage

---

[1]  As noted by the Defendants in the memorandum supporting their motion to dismiss, Ms. Baker consecutively numbered the first 40 paragraphs of her Complaint and then began numbering the subsequent paragraphs beginning at 1. The Court adopts the Defendants' citation method to these later paragraphs by including a "(2)."

[2]  For income tax purposes, 26 U.S.C. § 1031 provides a basic rule that "[n]o gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property

(*footnote continued on next page*)

"deployed MERS as an electronic agent under the Constructive Warranty Deed as nominee/beneficiary. . . ." [*Id.* ¶ 18.] However, on information and belief, Ms. Baker asserts that "MERS only tracks and updates ownership of the Payment Intangible registered with the MERS database software system[, but] MERS cannot transfer the beneficial right to the Tangible Accommodated Note instrument. . . ." [*Id.*] She asserts that MERS "does not have the requisite title [or] perfected security interest . . . to proceed in a foreclosure" of the real property at issue. [*Id.* ¶ 20.]

Ms. Baker further alleges that CitiMortgage improperly securitized the mortgage loan at issue. She asserts that CitiMortgage sold the loan to CMLT 2015-PS1 Trust. [Compl. ¶ 29(2).] CitiMortgage allegedly assigned or transferred a security interest in the property to a Sponsor of the CMLT 2015-PS1 trust before the trust's closing date. [*Id.* ¶ 16.] CitiMortgage allegedly did not receive full value in exchange for securitization of the loan, but "delivered a converted . . . unsecured Tangible Note as 'order paper' to Sponsor for Accommodated Party services rendered associated to originating the exchange transaction. . . ." [*Id.* ¶ 17.]

Ms. Baker also alleges that she "hired CERTFIED FORENSIC LOAN AUDITORS, LLC, out of Los Angeles, CA to perform a Forensic Chain of Title Securitization Analysis ("the Audit") completed by a court qualified expert to verify" her claims and that her loan was securitized. [Compl. ¶ 24.] She states that "[t]he results of the Audit clearly show that Plaintiff's Note and Security Deed was never transferred[, but instead,] was . . . pooled, sold, transferred with other loans and mortgages." [*Id.* ¶ 25.] She asserts that this is problematic because the Note and the Mortgage cannot be separated. [*Id.* ¶¶ 26-27.]

---

(*footnote continued from previous page*)
of like kind which is to be held either for productive use in a trade or business or for investment." 26 U.S.C. § 1031(a)(1).

From these allegations, Ms. Baker asserts the following claims:

(1) "Lack of Standing/Wrongful Foreclosure," [Compl. ¶¶ 2(2)-15(2)];
(2) "Fraud in the Concealment," [*id.* ¶¶ 16(2)-26(2)];
(3) "Fraud in the Inducement," [*id.* ¶¶ 27(2)-34(2)];
(4) "Unconscionable Contract," [*id.* ¶¶ 35(2)-42(2)];
(5) "Breach of Contract," [*id.* ¶¶ 43(2)-47(2)];
(6) "Breach of Fiduciary Duty," [*id.* ¶¶ 48(2)-53(2)];
(7) "Quiet Title," [*id.* ¶¶ 54(2)-61(2)];
(8) "Slander of Title," [*id.* ¶¶ 62(2)-69(2)];
(9) "Temporary Restraining Order and For Injunctive Relief," [*id.* ¶¶ 70(2)-75(2)];
(10) "Declaratory Relief," [*id.* ¶¶ 76(2)-79(2)]; and
(11) "Intentional Infliction of Emotional Distress," [*id.* ¶¶ 80(2)-90(2)].

**Ms. Baker's Previous Case**

This is not Ms. Baker's first case relating to the mortgage loan she received for the purchase of her home. Ms. Baker previously sued CitiMortgage in *Baker v. CitiMortgage* ("*Baker I*"), No. 16-cv-1103 (DSD/JSM), ECF No. 1-1 (D. Minn. Apr. 27, 2016) (Complaint). There, Ms. Baker sought "to void the mortgage, alleging: (1) the lending officer did not have authority to approve the loan; (2) the loan violated state usury laws; (3) CitiMortgage defrauded her in violation of 12 U.S.C. § 24(7); and (4) CitiMortgage inflicted emotional distress." [*Baker I*, Dismissal Order at 1-2, ECF No. 35.] In *Baker I*, United States District Judge David S. Doty dismissed all of Ms. Baker's claims. Judge Doty: (1) rejected Ms. Baker's assertion that CitiMortgage provided no valuable consideration for the loan; (2) found that Baker failed to allege any facts showing that CitiMortgage's loan officer lacked authority to enter a mortgage agreement; (3) determined that Baker had not alleged facts sufficient to support a usury claim under Minnesota law; (4) concluded that Baker did not state a claim for fraud; and (5) decided that Baker alleged no facts supporting an emotional distress claim. [*Baker I*, Dismissal Order at 4-10.] Judgment was entered in favor of CitiMortgage on September 8, 2016. [*Baker I*, Judgment, ECF No. 36.]

## II.   Discussion

CitiMortgage and MERS move to dismiss Ms. Baker's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for several reasons. First, Defendants argue that the Complaint should be dismissed based on the doctrines of claim preclusion and issue preclusion as a result of the Judgment entered in *Baker I*. Second, they contend that all of Ms. Baker's claims should be dismissed because they rely on a discredited "show me the note" theory. Third, they argue that the entire Complaint should be dismissed because it is based on an incorrect theory that securitization of loans is illegal. Fourth, Defendants assert that the Complaint should be dismissed to the extent Ms. Baker's claims rely on the theory that MERS improperly acted as a nominee of CitiMortgage. And finally, Defendants contend that Ms. Baker has failed, as a matter of law, to state a claim for which relief can be granted for independent reasons specific to each cause of action she has alleged. [*See generally* Defs.' Mem., ECF No. 22.][3]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 571 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 545. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556.

Having reviewed the Defendants' motion and Ms. Baker's response, the Court concludes that the Complaint fails to state a claim upon which relief can be granted.

---

[3]   The Defendants' memorandum includes a table of contents and a table of cited authorities that leads to a difference in the page numbers generated by the Court's electronic filing system and the pagination indicated by the Defendants' word processing application. When citing to the memorandum in this R&R, the Court will cite to the page numbers generated by the electronic filing system.

Ms. Baker has failed to plead sufficient facts to sustain any of the eleven causes of action that she asserts in this proceeding. Therefore, the Court declines to address the Defendants' alternative arguments for dismissal and expresses no opinion here regarding whether the Complaint or some portion of it would also be subject to dismissal for the other reasons cited in Defendants' memoranda.[4]

### A. Unlawful Securitization and "Show Me The Note" Theories

Defendants contend that claims throughout Ms. Baker's Complaint fail because they are premised upon two somewhat notorious theories that lack merit: (1) that securitizing the mortgage loan was itself unlawful; and (2) that the Defendants' conduct after the loan was completed was impermissible because the same entity did not simultaneously hold legal title to the mortgage and possess the promissory note, also known as the "show me the note" theory. [Defs.' Mem. at 9-12.]

Lenders and banks "securitize" housing loans when they "pool[] large numbers of these loans and put them into a trust, which s[ells] securities for which the loans

---

[4] In particular, it appears likely that certain portions of the Complaint in this lawsuit are barred by the doctrine of res judicata. The Defendants argued that this entire proceeding is barred by claim preclusion and issue preclusion. However, based on this Court's review of the Defendants' arguments, the governing case law, and the nature of the allegations in this Complaint, addressing the res judicata effect of the judgment in *Baker I* is not as straightforward as the Defendants' briefing implies. For example, though Defendants contend that all of *Baker I* and this case have a common core of operative facts, they do little to address the apparent differences in the claims from each case. Whereas the operative facts for most, if not all, of the claims in *Baker I* concerned CitiMortgage's alleged conduct in making the loan to Ms. Baker, many of the issues implicated in this Complaint concern CitiMortgage's subsequent conduct in securitizing the loan and attempting to foreclose *after* the loan transaction had already been completed. The cases Defendants cite in their briefing do little to illuminate this issue either. Accordingly, except in a single instance, the Court declines to consider the Defendants' res judicata arguments and relies instead on the Rule 12(b)(6) analysis that follows.

serve[] as collateral." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 648 (8th Cir. 2001).

> To raise funds for new mortgages, a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ("PSA").

*BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp.*, 673 F.3d 169, 173 (2d Cir. 2012). This process of "[s]ecuritization is standard practice." *Blaylock v. Wells Fargo Bank, N.A.*, 2012 WL 2529197, at *5 (D. Minn. June 29, 2012).

The show-me-the-note theory is, generally speaking, characterized by allegations that a defendant cannot foreclose on a mortgage because it does not own or possess the original promissory note. *Stein v. Chase Home Fin., LLC*, 662 F.3d 976, 978 (8th Cir. 2011) ("A 'show me the note' plaintiff typically alleges a foreclosure is invalid unless the foreclosing entity produces the original note."); *see also Karnatcheva v. JPMorgan Chase Bank, N.A.*, 705 F.3d 545, 546 (8th Cir. 2013) (describing the "so-called 'show-me-the-note' theory under which an entity seeking foreclosure must present the original promissory note"").

Reading the Complaint's allegations as a whole, Ms. Baker is plainly alleging that CitiMortgage sold or transferred the promissory note so that it was pooled together with a number of other loans in a trust identified as "CMLT 2015-PS1." [*See, e.g.*, Compl. ¶ 11 (identifying the trust); ¶ 13 (describing securitization generally); ¶ 15 (discussing the sale of the note); ¶ 16-17 (appearing to assert that CitiMortgage unlawfully assigned the note); ¶ 19 (alleging that the note was transferred to the trust); ¶ 24 ("Plaintiff's loan was SECURITIZED"); ¶ 25 ("The Note was however pooled, sold, transferred, with other loans and mortgages"); *see also id.*, Ex. A ¶¶ 7-8 (stating that the loan was securitized).] Some of these allegations appear to allege that

8

CitiMortgage received some payment from the "Sponsor" of the CMLT 2015-PS1 Trust for the transfer of the Note, but the delivery to the CMLT 2015-PS1 Trust did not occur until after the Trust closed. [*Id.* ¶¶ 19-20.] Ms. Baker connects these securitization allegations to her allegations of an "Exchange" pursuant to 26 U.S.C. § 1031. [*Id.* ¶ 11 (alleging on information and belief a connection between CitiMortgage and the trust "in the §1031 – Exchange"); ¶ 13 (stating that a "§ 1031 – Exchange" is a "transactional scheme" for securitization of loans).] Though the exact outlines of these assertions are difficult to discern, the thrust of Ms. Baker's claims nevertheless emerges. Essentially, she contends that the alleged securitization of the loan deprived CitiMortgage and MERS of the authority to foreclose on the loan and rendered various actions taken by the Defendants unlawful.

Ms. Baker also makes a number of allegations that fairly clearly challenge the authority of the Defendants to foreclose based on the fact that MERS does not possess the original Note and the Mortgage; these allegations invoke the show-me-the-note theory. For example, she "alleges that Defendant, and each of the Successor[s] in Interest, cannot establish possession, show proper receipt, transfer, negotiations, assignment and ownership of the Tangible Note or Warranty Deed." [Am. Compl. ¶ 21.] Ms. Baker alleges that the "Note and Security Deed took two distinctly different ways. Plaintiff's Security Deed was never transferred. The Note was however pooled, sold, [and] transferred with other loans and mortgages." [*Id.* ¶ 25.] The Complaint also cites cases describing a note and mortgage as "inseparable" and asserts "that the note must be with the contract or the contract is considered void by any and all courts, [and as a result] Plaintiff's Security Deed is . . . invalid." [*Id.* ¶¶ 26-27.]

The Complaint weaves the allegations of unlawful securitization and the show-me-the-note theory into the "causes of action" Ms. Baker asserted. Several identified causes of action—specifically the First, Second, Third, Sixth, Seventh, and Eighth Causes of Action—are explicitly based upon Ms. Baker's allegations concerning the securitization of the loan. [Am. Compl. ¶¶ 3(2)-4(2), 6(2)-9(2), 11(2), 18(2), 29(2),

9

50(2)-52(2), 57(2)-59(2), 64(2)-69(2).] The First Cause of Action and Third Cause of Action both rely on show-me-the-note theory as well. [*Id.* ¶¶ 10(2)-12(2) (alleging that a defendant must hold both the note and the mortgage); *id.* ¶ 29(2) ("Defendant misrepresented that they are the 'holder and owner' of the Tangible Note and the beneficiary of the Warranty Deed.").] Though at times less explicitly, Ms. Baker also ties the show-me-the-note theory to the claims she asserts in the Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action in the Complaint. [*See id.* ¶¶ 51(2)-52(2) (tying transfer of loan to alleged inability to comply with Covenant 23 in the mortgage); *id.* ¶¶ 55(2)-57(2) (concerning ownership of the note and security instrument and claiming lack of sufficient interest in property); *id.* ¶ 64(2)-66(2) (appearing to challenge Defendants' authority to pursue foreclosure based on assignments of the loan and non-perfected interests in the mortgage); *id.* ¶ 74(2) (challenging Defendants' ability to show adequate right to foreclose based on separation of note and mortgage); *id.* ¶ 77(2) (seeking declaration of rights concerning the note and the mortgage).]

Accepting as true the factual allegation that CitiMortgage securitized Ms. Baker's loan, this does not create a basis for the claims in the Complaint. "[S]ecuritization does not affect the Defendants' rights to foreclose." *Blaylock*, 2012 WL 2529197, at *5 (citing *Carlson v. JP Morgan Chase Bank*, No. 10-cv-272, 2010 WL 1417626, at *4 (D. Minn. Mar. 15, 2010) ("But this Court cannot discern how any securitization in the present case gave rise to a cause of action.")). Ms. Baker's allegations concerning the securitization of her loan resemble those made in other cases where mortgagors have challenged defendants' rights to foreclose based on alleged violations of the terms of a securitization trust. *See, e.g.*, *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 82-83 (2d Cir. 2014) (describing plaintiffs' allegations challenging alleged assignments to defendant trusts in connection with securitization of mortgage loans). To the extent that Ms. Baker asserts that the foreclosure proceedings violate the terms of the trust, any such claim must fail because a mortgagor does not have standing to make such a challenge. *See Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (agreeing with district

10

court decisions concluding that mortgagors do not have standing to seek declaratory judgments concerning trust agreements because the mortgagors are not parties to or beneficiaries of the agreements). The Court is unaware of any case law which supports Ms. Baker's securitization theory. For these reasons, the Court concludes that the First, Second, Third, Sixth, Seventh, and Eighth Causes of Action in the Complaint must be dismissed.

Similarly, several claims in the complaint should be dismissed because they are premised upon the show-me-the-note theory. This theory has been addressed and rejected by the Minnesota Supreme Court, the Eighth Circuit, and decisions within the District of Minnesota. *Jackson v. Mortg. Elec. Reg. Sys., Inc.*, 770 N.W.2d 487, 500 (Minn. 2009) ("[Minnesota] case law establishes that a party can hold legal title to the security instrument without holding an interest in the promissory note."). As courts have previously held, where a mortgagor's various claims depend upon a "finding that the separation of the original note and mortgage renders the legal and record holder of the mortgage unable to institute foreclosure proceedings," dismissal of those claims is appropriate. *Krieger v. Summit Mortg. Corp.*, No. 12-cv-2522 (SRN/JJG), 2013 WL 1149536, at *3 (D. Minn. Mar. 1, 2013) (citing *Butler v. Bank of America, N.A.*, 690 F.3d 959, 962 (8th Cir. 2012) (same), and *Iverson v. Wells Fargo Bank, N.A.*, No. 11-cv-2225 (MJD/AJB), 2012 WL 611196, at *4 (D. Minn. Feb. 6, 2012) (same)). Here, because the claims asserted in the First, Third, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action are premised upon allegations that require just such a finding, those claims should be dismissed pursuant to Rule 12(b)(6).

Because the First, Second, Third, Sixth, Seventh, Eighth, Ninth, and Tenth causes of action are premised upon the meritless assertion that securitization of the loan was unlawful or the discredited show-me-the-note theory, or some combination of the two, these claims should be dismissed.[5]

---

[5] The Court need not address whether Ms. Baker's incorporation of all previous allegations in the Complaint to each of her causes of action by reference requires

(*footnote continued on next page*)

## B. Alternative Reasons for Dismissal

As argued by the Defendants, the Court finds that the claims asserted in Ms. Baker's pleading are subject to dismissal for additional reasons.

### Lack of Standing/Wrongful Foreclosure

Defendants argue that Ms. Baker fails to state a claim in her first cause of action for "Lack of Standing/Wrongful Foreclosure" because no lack-of-standing claim exists under Minnesota law and any claim concerning the foreclosure process must be based on an alleged statutory violation. [Defs.' Mem. at 20.] The Court agrees with Defendants that Ms. Baker has failed to state a claim in her first "cause of action." *See Peterson v. CitiMortgage, Inc.*, No. 11-cv-2385, 2012 WL 1971138, at *2 n.3 (D. Minn. June 1 2012) (concluding that a claim the mortgagee had no legal standing to foreclose failed to state a claim under Minnesota law). For this independent reason, Ms. Baker's first claim should be dismissed to the extent it relies on such an argument.

### Fraud

"In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). This means "a plaintiff must plead the time, place, and contents of the false representations, the identity of the individual who made the representations and what was obtained thereby." *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 856 (D. Minn. 2012) (quotation marks omitted). Aside from the assertions connecting the fraud-based claims in Counts II and III to her already-rejected theories concerning securitization and the separation of the note from the mortgage, [Am. Compl. ¶¶ 18(2)-19(2), 28(2)-29(2)], Ms. Baker has failed to plead fraud with sufficient particularity. Her fraud-based allegations consist of

---

(*footnote continued from previous page*)
dismissal of her Fourth, Fifth, and Eleventh Causes of Action (as Defendants contend) because those claims fail for additional reasons described in Part II.B of this Report and Recommendation.

conclusory assertions and formulaic recitation of the elements of her claims. [*Id.* ¶¶ 17(2), 19(2)-25(2), 30(2)-34(2).] Therefore, Ms. Baker has failed to state a claim for fraudulent concealment or fraudulent inducement.

### Unconscionable Contract[6]

In her fourth claim, Ms. Baker asserts that the contract at issue is unconscionable. Pursuant to Minnesota law, an unconscionable contract is one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *In re Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987) (quotation marks omitted). To show the contract is unconscionable, a party must demonstrate that it had no meaningful choice but to deal with the other party and to accept the contract as offered." *Sports and Travel Marketing, Inc. v. Chicago Cutlery co.*, 811 F. Supp. 1372, 1380 (D. Minn. 1993) (quotation marks omitted). Ms. Baker's allegations relating to this claim are conclusory, fail to show that the terms of the contract were such that no person in her senses would enter the agreement, and fail to show that she had no meaningful choice but to deal with CitiMortgage and accept the contract as offered. [Am. Compl. ¶¶ 35-42.] This claim should be dismissed for failure to state a claim.

### Breach of Contract

Ms. Baker's fifth claim alleges breach of contract. To state a claim for breach of contract, a plaintiff must plead facts that show (1) the existence of a contract; (2) performance of all conditions precedent by the plaintiff; and (3) a material breach by the defendant. *Lorenz v. The Bank of New York Mellon*, No. 15-cv-3042 (ADM/TNL), 2016 WL 4445237, at *3 (D. Minn. Aug. 22, 2016). In her breach of

---

[6]   In *Baker I*, Judge Doty concluded that there was no indication that the terms of the mortgage were unconscionable. *Baker I*, 2016 WL 4697334, at *3. This claim is also plainly barred by both claim preclusion and issue preclusion as a result of that decision.

contract claim, Ms. Baker references covenant 23 in her Mortgage, [Am. Compl. ¶ 45], which provides:

> Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

[Mortgage, Defs.' Ex. 2, ECF No. 23-2.] Ms. Baker alleges that CitiMortgage and MERS were obligated to release any security interest in the property when the loan was securitized. [Am. Compl. ¶ 46(2).] Here, Ms. Baker has not alleged that she has paid off the loan, and Covenant 23 of the Mortgage "is triggered when the balance of the mortgage has been satisfied." *Lorenz*, 2016 WL 4445237, at *3 (dismissing an identical breach of contract claim based on a similar covenant in a mortgage).

### Breach of Fiduciary Duty

In her sixth cause of action, Ms. Baker asserts that CitiMortgage breached a fiduciary duty to her. To state a claim for breach of a fiduciary duty, a plaintiff must plead facts showing "the existence of a fiduciary duty, breach, causation and damages." *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1043 (D. Minn. 2010) (citations omitted). However, courts have consistently rejected the assertion that a lender has a fiduciary relationship with a borrower. *See, e.g.*, *Dunbar v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 839, 848 (D. Minn. 2012) ("Dismissal of the fiduciary-duty claim is further warranted because banks have no duty to counsel customers, and lenders have no fiduciary duty toward borrowers."); *Oberg v. Shapiro*, No. 15-cv-3678 (PJS/SER), 2016 WL 4501354 (D. Minn. Aug. 1, 2016) (dismissing fiduciary duty claim because nothing in the complaint indicated borrower and lender had anything other than typical borrower-lender relationship). Ms. Baker's allegations suggest only that she and CitiMortgage had a typical borrower-lender relationship and therefore no special relationship existed sufficient to sustain a claim for breach of fiduciary duty. This claim should be dismissed.

### Quiet Title

Ms. Baker also asserts a quiet title claim against the Defendants. Under Minnesota law, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01. However, "[m]ere allegations of plaintiff's possession of the Property and conclusory statements that defendants' adverse claims are invalid are insufficient to state a claim for relief." *Lee v. Mortg. Elec. Registration Sys., Inc.*, No. 13-cv-950 (JNE/JSM), 2014 WL 320422, at *6 (D. Minn. Jan. 29, 2014). In her quiet title claim, Ms. Baker alleges that the Defendants' claim an adverse interest in the property at issue which are "without any legal right whatsoever." [Compl. ¶ 57(2).] Such mere allegations of possession of the property at issue and conclusory statements that adverse claims by CitiMortgage and MERS are invalid are insufficient.

### Slander of Title

In her eighth cause of action, Ms. Baker asserts a slander of title claim. To state such a claim, a plaintiff must allege facts that show: (1) a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property cause the plaintiff pecuniary loss in the form of special damages. *Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000). With regard to malice, a plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'" *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting *Brickner v. One Land Dev. Co.*, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)). Ms. Baker asserts only that CitiMortgage or MERS acted with malice by filing the October 28, 2011 assignment of warranty deed with the Anoka County Recorder's Office because it was signed by Ms. Enriquez, who allegedly lacked authority to do so. [*See* Am. Compl. ¶¶ 34-36, 69.]

Such allegations are not sufficient to state a slander of title claim. *See Ko v. Mortg. Elec. Registration Sys.*, 2013 WL 4052680, at *4 (D. Minn. Aug. 9, 2013) ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for a slander of title, and this claim will be dismissed.") (internal citation omitted). The slander of title claim should be dismissed.

### Temporary Restraining Order and for Injunctive Relief

The claim in Counts IX and X of the Complaint seek injunctive relief. However, these are not causes of action. Because all of the other causes of action should be dismissed, these "claims" should be dismissed as well. *Estate of Lane v. CMG Mortg., Inc.*, No. 14-cv-3277, 2015 WL 2195176, at *7 (D. Minn. May 11, 2015) ("Injunctive relief is a remedy and not . . . a cause of action and a cause of action must exist before injunctive relief may be granted.").

### Declaratory Relief

"A declaratory judgment is a remedy, not a cause of action." *Wolff v. Bank of New York Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014) (citing cases). Because the substantive claims in her complaint should be dismissed under Rule 12(b)(6), Ms. Baker is "left with a remedy in search of right." *Id.* (quoting *Scanlon v. Northwest Mortg., Inc.*, No. 11-cv-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012)). The declaratory judgment claim should be dismissed.

### Intentional Infliction of Emotional Distress

To state a claim of intentional infliction of emotional distress, a plaintiff must allege that a defendant's conduct: was extreme and outrageous; was intentional or reckless; and caused the plaintiff severe emotional distress. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). Here, the alleged conduct of CitiMortgage and MERS (moving forward with foreclosure proceedings without authority to do so)

is not sufficiently extreme and outrageous to sustain such a claim. *See, e.g.*, *Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 975-76 (D. Minn. 2015) (collecting cases where intentional infliction of emotional distress claims were dismissed for failure to allege conduct by defendants that rose to the level of being extreme and outrageous). Accordingly, this claim should be dismissed for failure to state a claim.

## Recommendation

Based on the foregoing, the Court makes the following recommendations.

1. The Defendants' Motion to Dismiss **[ECF No. 20]** should be **GRANTED**.

2. This action should be **DISMISSED**.

Date: December 21, 2017

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.