# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Michelle A. Baker,** | **File No. 17-cv-02271 (SRN/KMM)** |
| **Plaintiff,** | |
| **v.** | |
| **CitiMortgage, Inc. and Christian Bank & Trust,** *as Trustee for Securitized Trust Citigroup Mortgage Loan Trust Inc 2015-PS1 Trust, Mortgage Electronic Registration System ("MERS"),* | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |
| **Defendants.** | |

Michelle A. Baker, *pro se*, 16167 Unity Street NW, Andover, MN 55304.

Cameron A. Lallier and Thomas W. Pahl, Foley & Mansfield, PLLP, 250 Marquette Ave., Ste. 1200, Minneapolis, MN 55401; Christopher Steven Comstock, Joseph Martin Callaghan, Lucia Nale, and Thomas Vangel Panoff, Mayer Brown LLP, 71 South Wacker Drive, Chicago, IL 60606, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Objection [Doc. Nos. 37 & 39][1] to Magistrate Judge Katherine Menendez's Report and Recommendation ("R&R") [Doc. No. 34] issued on December 21, 2017.  In the R&R, Magistrate Judge Menendez recommended that the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) [Doc.

---

[1] Although Doc. No. 39 is docketed as a Motion for Reconsideration, and is the only document currently "pending" before the Court, as fully explained below, this Court will construe the documents that Plaintiff filed after the magistrate judge issued the R&R as an Objection to that R&R.

No. 20] filed by Defendants CitiMortgage, Inc. ("CitiMortgage") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") be granted because Plaintiff Michelle Baker ("Plaintiff") has failed to state a claim upon which relief may be granted. As explained below, after conducting a *de novo* review of all the files, records, and proceedings herein, this Court overrules Plaintiff's Objection, adopts the R&R in its entirety, and dismisses this action with prejudice.

## I.   BACKGROUND

At the outset, this Court notes that Plaintiff is appearing *pro se*, and, as such, her pleadings are entitled to a liberal construction. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." (alteration in original) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004))). That notwithstanding, this Court echoes the magistrate judge in noting that Plaintiff's Complaint and subsequent filings are in some sections very difficult to follow and understand. As the magistrate judge noted, Plaintiff "uses a host of legal jargon that lacks a discernible and clear meaning." (R&R at 2.) But like the magistrate judge, this Court has endeavored to read all of Plaintiff's submissions in the best possible light.

### A.  Factual Background

This Court assumes—as it must when ruling on a motion to dismiss under 12(b)(6)—that all the factual allegations pleaded in the complaint are true. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). This Court does not, however, accept

as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that a plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

The R&R thoroughly and accurately describes relevant factual background of this case, so this Court incorporates it herein by reference. In 2010, Plaintiff obtained a loan from CitiMortgage to purchase a home in Andover, Minnesota. (*See* R&R at 3.) On March 3rd of that year, Plaintiff executed a promissory note ("Note") for $154,849 in favor of CitiMortgage. (*Id.*) The loan was secured with a mortgage in favor of MERS, "acting solely as nominee" for CitiMortgage and CitiMortgage's successors and assigns. (Mortgage, Defs.' Ex. 2 [Doc. No. 23-2] at 3; *see also* R&R at 3.) Plaintiff presumably defaulted on her loan, and on October 28, 2011, a "Notice of Default" was filed with the Anoka County Recorder's Office. (*See* R&R at 3.) Also on October 28, MERS recorded an "Assignment of Warranty Deed," signed by Brenda Enriquez as Assistant Secretary for MERS. (*See id.*) According to Plaintiff, however, Enriquez was not employed by MERS. (*See id.*) Thereafter, three Notices of Sale were recorded—on May 9, 2012; July 16, 2015; and November 22, 2016. (*Id.*)

According to Plaintiff, the day she executed the Note, she "was issued an Uncertificated Security to execute in the capacity of (Accommodation Party) to a Tangible Note Bill of Exchange . . . regarding a purported loan to (Accommodated Party) CITIMORTGAGE, INC for $154,849.00." (*Id.* (quoting Compl. [Doc. No. 1-1] ¶ 29).) According to Plaintiff, CitiMortgage is thus "an account debtor Accommodated Party to a 26 U.S.C[.] § 1031 Exchange of property held for productive use or investment." (*Id.*

3

(quoting Compl. ¶ 30).)[2] According to Plaintiff, "[a]s part of the transaction scheme of 26 U.S.[C.] § 1031 – Exchange, Defendant [CitiMortgage] deployed MERS as an electronic agent under the Constructive Warranty Deed as nominee/beneficiary . . . ." (*Id.* (quoting Compl. ¶ 18).) According to Plaintiff, however, "MERS cannot transfer the beneficial right to the Tangible Accommodated Note instrument," (*id.* (quoting Compl. ¶ 18)), and "does not have the requisite title, perfected security interest or standing to proceed in a foreclosure" of her home, (*id.* (quoting Compl. ¶ 20)).

In addition to these allegations, Plaintiff contends that CitiMortgage improperly securitized the Mortgage.[3]  (*Id.* at 4.) She avers that CitiMortgage sold the loan to CMLT 2015-PS1 Trust ("the Trust"). (*Id.*) According to Plaintiff, CitiMortgage assigned or transferred a security interest in the property to a "Sponsor" of the Trust. (*Id.*) However, Plaintiff contends, CitiMortgage did not receive full value in exchange for securitization of the loan. (*Id.*)

Finally, Plaintiff alleges that she "hired CERTIFIED FORENSIC LOAN AUDITORS, LLC, . . . to perform a Forensic Chain of Title Securitization Analysis ('the

---

[2] 26 U.S.C. § 1030 provides,

> (a) Nonrecognition of gain or loss from exchanges solely in kind.—
>> (1) In general.—No gain or loss shall be recognized on the exchange of real property held for productive use in a trade or business or for investment if such real property is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment.

[3] Securitization is "a process by which expected payment streams are pooled together and restructured into securities, which are then sold to investors." *Martinez v. Capital One, N.A.*, 672 F. App'x 186, 186 n.2 (3d Cir. 2017) (quoting *In re Oakwood Homes Corp.*, 356 F. App'x 622, 624 (3d Cir. 2009)).

Audit') completed by a court qualified expert to verify" her claims. (*Id.* (quoting Compl. ¶ 24).) According to Plaintiff, the Audit shows that Plaintiff's loan was securitized. (Compl. ¶ 24.) Plaintiff further asserts that "[t]he results of the Audit clearly show that Plaintiff's Note and Security Deed was never transferred[, but instead,] was ... pooled, sold, transferred with other loans and mortgages." (R&R at 4 (alteration in original) (quoting Compl. ¶ 25).)

### B. Plaintiff's Prior Action Against Defendants

On March 29, 2016, Plaintiff filed an action against CitiMortgage in state court, which CitiMortgage removed to federal court ("*Baker I*"). (*See* Notice of Removal, *Baker v. CitiMortgage, Inc.*, No. 16-cv-01103 (DSD/JSM) (D. Minn. Apr. 27, 2016), ECF No. 1.) At issue in that case was the same $154,849 loan that Plaintiff obtained from CitiMortgage. (*Id.*) In *Baker I*, Plaintiff sought "to void the mortgage, alleging: (1) the lending officer did not have authority to approve the loan; (2) the loan violated state usury laws; (3) CitiMortgage defrauded her in violation of 12 U.S.C. § 24(7); and (4) CitiMortgage inflicted emotional distress." *Baker v. CitiMortgage, Inc.*, No. 16-cv-1103 (DSD/JSM), 2016 WL 4697334, at *1 (D. Minn. Sept. 7, 2016). CitiMortgage moved to dismiss under Rule 12(b)(6), and on September 7, 2016, the Honorable David Doty dismissed Plaintiff's complaint with prejudice. Judge Doty found (1) that Plaintiff "ha[d] not alleged any facts indicating that the loan officers acted without authority or that CitiMortgage did not have authority under its charter to enter into the mortgage agreement;" (2) that Plaintiff had neither plausibly alleged a claim of usury nor that "the loan was predatory or that the terms of the mortgage were unconscionable;" (3) that Plaintiff had not pleaded a plausible claim

for fraud; and (4) that she had "fail[ed] to plead sufficient facts supporting a plausible claim under a theory of either intentional or negligent infliction of emotional distress." *Id.* at *3.

### C.  Plaintiff's Second Case Against Defendants (This Action)

Plaintiff did not appeal Judge Doty's decision in *Baker I*. Instead, she filed the instant suit, again in state court, on June 5, 2017. (*See* Compl. at 4.) Defendants timely removed to federal court. Plaintiff's new Complaint asserts eleven "causes of action:"

1. Count I: Lack of Standing/Wrongful Foreclosure
2. Count II: Fraud in the Concealment
3. Count III: Fraud in the Inducement
4. Count IV: Unconscionable Contract
5. Count V: Breach of Contract
6. Count VI: Breach of Fiduciary Duty
7. Count VII: Quiet Title
8. Count VIII: Slander of Title
9. Count IX: Temporary Restraining Order and for Injunctive Relief
10. Count X: Declaratory Relief
11. Count XI: Intentional Infliction of Emotional Distress

(*See* Compl.)

On July 24, 2017, Defendants moved to dismiss.  Defendants contend that there are several, independent grounds for dismissal.  First, they contend that Plaintiff's action is barred by the doctrines of *res judicata* and collateral estoppel because the Complaint is grounded on the same circumstances and operative facts that were at issue in *Baker I*. (Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 22] at 12–14.)[4] Second, Defendants contend that Plaintiff's Complaint should be dismissed: (1) because all Counts are grounded on the two widely-rejected arguments that (a) a foreclosure is not valid if the Note and Mortgage are "separated"—the so-called "show-me-the-note" theory—and that (b) securitization is

---

[4] This Court cites to the ECF system's pagination.

generally unlawful, (*id.* at 16–19); and (2) because all Counts constitute "causes of action" that are not recognized in Minnesota; fail as a matter of law for other reasons; or do not contain the necessary factual allegations to survive a Rule 12(b)(6) motion, (*id.* at 20–38).

On December 21, 2017, the magistrate judge issued an R&R recommending that Plaintiff's Complaint be dismissed. Overall, the magistrate judge found that Plaintiff "has failed to plead sufficient facts to sustain any of the eleven causes of action that she asserts in this proceeding." (R&R at 7.) More specifically, the magistrate judge first thoroughly analyzed Plaintiff's arguments challenging the legality of securitization generally as well as her reliance on the "show-me-the-note" theory. (*Id.* at 7–11.) With respect to securitization, the magistrate judge noted that the essence of Plaintiff's claims was that "the alleged securitization of the loan deprived CitiMortgage and MERS of the authority to foreclose on the loan and rendered various actions taken by Defendants unlawful." (*Id.* at 9.) The magistrate judge, however, concluded that even "[a]ccepting as true the factual allegation that CitiMortgage securitized [Plaintiff's] loan," nothing in Plaintiff's Complaint gave rise to liability based on securitization. (*Id.* at 10.) As such, the magistrate judge concluded that Counts I–III and VI–VIII must be dismissed, (*id.* at 11), as they are "explicitly based upon [Plaintiff's] allegations concerning the securitization of the loan," (*id.* at 9).

The magistrate judge then reached a similar conclusion regarding Plaintiff's reliance on the show-me-the-note theory. The magistrate judge noted that Plaintiff "challenge[s] the authority of the Defendants to foreclose based on the fact that MERS does not possess the original Note and the Mortgage"—allegations that "invoke the show-me-the-note-theory." (*Id.* at 9.) However, because this theory has been analyzed and rejected by federal district

courts, the Minnesota Supreme Court, and the Eighth Circuit, the magistrate judge recommended that Counts I, III, and VI–X be dismissed because they explicitly rely on such a theory. (*Id.* at 11.) In all, the magistrate judge recommended dismissal of all Counts except for IV–V and XI insofar as "they are premised upon the meritless assertion that securitization of the loan was unlawful or [upon] the discredited show-me-the-note theory, or some combination of the two." (*Id.*)

In addition to the aforementioned analysis, the magistrate judge also determined that *all* of Plaintiff's claims should be dismissed for several independent reasons specific to each Count. (*Id.* at 12–17.) As for Count I, the magistrate judge found that it should be dismissed because "no lack-of-standing claim exists under Minnesota law." (*Id.* at 12.) The magistrate judge then found that Counts II and III should be dismissed not only because they are tied to both of the widely-rejected theories discussed above, but also for the independent reason that Plaintiff failed to meet the particularity requirements applicable to fraud-based claims. (*Id.* at 12–13.) For similar reasons, the magistrate judge concluded that Counts IV–VIII should be dismissed, as Plaintiff's claims were "conclusory," and she failed to allege any facts that would render such claims plausible. (*Id.* at 13–16.) As to Count XI (intentional infliction of emotional distress), the magistrate judge found that Defendants' alleged conduct was "not sufficiently extreme and outrageous to sustain such a claim." (*Id.* at 16–17.)  Finally, as to Counts IX and X—claims for a temporary restraining order/injunctive relief and for declaratory relief, respectively—the magistrate judge highlighted that these were not causes of action but rather remedies, and because all substantive claims were recommended for dismissal, these "Counts" should be dismissed as well. (*Id.* at 16.) Having

found all of the aforementioned reasons to be sufficient for dismissal, the magistrate judge found it unnecessary to conduct the more complicated analysis of *res judicata* and collateral estoppel. (*Id.* at 7 n.4.)

On January 10, 2018, having received no objections to Magistrate Judge Menendez's R&R within the time period permitted, this Court issued an Order adopting the R&R and dismissing this action in its entirety, with prejudice. (*See* Jan. 10 Order [Doc. No. 35].) That same day, judgment was entered by the clerk of court. (*See* J. Civil Case [Doc. No. 36].) The next day, however, the clerk's office received a document from Plaintiff titled "Response to Vacate Recommendation and Judgment," which was dated January 10th. (*See* Pl.'s Resp. Vacate Recommendation & J. ("Pl.'s Resp.") [Doc. No. 37].) In this document, Plaintiff generally asks this Court to "reverse her recommendation and allow liberal discovery so that all of the issues are fully developed and a FAIR trial can be had." (*Id.* at 2.) Plaintiff included general allegations purporting to explain how "Defendants are committing servicing fraud," (*id.* at 4–10), and again reiterated her "show-me-the-note" arguments, (*id.* at 11–13, 21). Plaintiff also added allegations that she never received a "disclosure statement," (*id.* at 13), and that "Defendants are violating the FDCPA and TILA Amendments and cannot LEGALLY foreclose," (*id.* at 16). Plaintiff concluded by stating that she "respectfully objects to the Final Report and Recommendations by Magistrate Judge Menendez and asks that this recommendation be rescinded . . . ." (*Id.* at 22.)

On January 19, 2018, Defendants filed an opposition. Defendants generally argue that Plaintiff's "Response" should not be considered as an Objection because it is untimely. (Defs.' Opp'n to Pl.'s Resp. [Doc. No. 38] at 3.) However, they argue that even if the filing

is construed as a timely Objection, it "contains no legal basis for rejecting or modifying the R&R or the judgment." (*Id.* at 2.) Then, on February 13, Plaintiff filed a document titled "Motion for Reconsideration," again asking this Court to reconsider its ruling adopting the R&R and dismissing the case. (*See* Pl.'s Mot. Reconsideration [Doc. No. 39].) On February 27, Defendants filed a response opposing Plaintiff's Motion. (*See* Defs.' Opp'n to Pl.'s Mot. Reconsideration [Doc. No. 42].) Defendants assert that it should not be considered because it is procedurally deficient and untimely, and that in any event, it is without a legal basis. (*Id.*)

## II.    DISCUSSION

### A.  Timeliness of Plaintiff's Objection

The first question the Court must address is how to construe Plaintiff's filings post-entry of judgment. Although Plaintiff labeled her first document as a "Response to Vacate Recommendation and Judgment," it is clear that it constitutes Plaintiff's Objection to the R&R, and this Court will construe it as such. Because Plaintiff is representing herself, this Court must construe her filings liberally. *Solomon*, 795 F.3d at 787; *see also Vansickle v. Comm'r Soc. Sec.*, 277 F. Supp. 2d 727, 728 (E.D. Mich. 2003) (construing the filing in which plaintiff criticized the magistrate judge's R&R and sought review of it as "objections" despite the fact that the filing was mislabeled as a "reply" to the R&R).

With respect to timeliness, this Court will consider Plaintiff's Objection even though it was docketed the day after this Court issued the final Order adopting the R&R.  A few factors bear on this Court's decision. First, the 14-day deadline (or in this case, the 17-day deadline to account for service by mail), is not jurisdictional, and thus this Court is not

barred from considering late objections. *See Kruger v. Apfel*, 214 F.3d 784, 786–87 (7th Cir. 2000) (noting that the time period for filing objections "is not jurisdictional," and thus "the district court was not barred from considering the late objections"); *see also Vogel v. U.S. Office Prod. Co.*, 258 F.3d 509, 515 (6th Cir. 2001) ("[W]here a party files objections after [the time period allowed by rule], a district court can still consider them."); *Gustafson v. Reiser*, No. 14-cv-3351 (JRT/JJK), 2016 WL 6915299, at *5 (D. Minn. Nov. 23, 2016) (vacating its prior order adopting R&R, as well as the judgment, in order to consider late objections). Second, Plaintiff's Objection is not egregiously late, and Defendants do not assert that they suffered any prejudice from her late filing. *See Kruger*, 214 F.3d at 787 (holding that district court should have reviewed objections where party filed them one day after the deadline and opposing party was not prejudiced by the late filing). Finally, Plaintiff is appearing *pro se*. *See Leventhal v. Schaffer*, 612 F. Supp. 2d 1026, 1030 (N.D. Iowa 2009), *aff'd*, 365 F. App'x 37 (8th Cir. 2010) ("Because of Leventhal's pro se status, the court will consider his objections as timely filed.")

### B.  Merits of Plaintiff's Objection

Upon the issuance of an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).  "The objections should specify the portion of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-cv-1958 (JRT/RLE), 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  Objections which are not specific but merely parrot arguments already presented to and considered by the magistrate judge are not entitled to *de novo* review.  *Thompson v. Nix*, 897 F.2d 356, 358 (8th Cir. 1990) (noting that

objections must be "specific to trigger de novo review by the District Court of any portion of the magistrate's report and recommendation"); *Dunnigan v. Fed. Home Loan Mortg. Corp.*, No. 15-cv-2626 (SRN/JSM), 2017 WL 825200, at *3 (D. Minn. Mar. 2, 2017) (citing *Mashak v. Minnesota*, No. 11-cv-473 (JRT/JSM), 2012 WL 928251, at *2 (D. Minn. Mar. 19, 2012)).

Here, Plaintiff's Objection merely restates the same allegations included in her Complaint and original opposition to Defendants' Motion to Dismiss. Under those circumstances, this Court would arguably not be *obliged* to conduct a *de novo* review. Nevertheless, cognizant that Plaintiff is appearing *pro se*, this Court has conducted a full *de novo* review of all the files and records in this case. *See Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (requiring *de novo* review when *pro se* plaintiff's objections "sufficiently directed the district court to the alleged errors" in the magistrate judge's R&R); *see also Bronakowski v. Boulder Valley Sch. Dist.*, 549 F. Supp. 2d 1269, 1271 (D. Colo. 2008) (construing objections filed by a *pro se* litigant "generously and with . . . leniency"), *aff'd*, 294 F. App'x 408 (10th Cir. 2008). Even after that *de novo* review, however, this Court fully agrees with the magistrate judge, including with the entirety of her reasoning and ultimate conclusion that this action should be dismissed for failure to state a claim upon which relief may be granted.[5]

_____

[5] The Court does note, however, that it did *not* consider some portions of Plaintiff's Objection to the extent they purport to raise new issues and arguments. New claims or arguments, presented for the first time in the objections to a report and recommendation, will not be reviewed. *See Britton v. Astrue*, 622 F. Supp. 2d 771, 776 (D. Minn. 2008); *Nhut Le v. Wells Fargo Bank, N.A.*, No. 13-cv-1920 (SRN/JJK), 2014 WL 1672353, at *3 (D. Minn. Apr. 28, 2014), *aff'd*, 595 F. App'x 661 (8th Cir. 2015).

### 1.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### 2.  Securitization and Show-Me-the-Note Theories

As correctly found by the magistrate judge, the vast majority of Plaintiff's claims are grounded on two primary assertions. First, Plaintiff argues that Defendants could not foreclose on her mortgage because they do not own the Note for the mortgage. (*See, e.g.*, Compl. ¶ 20 ("[A]ny assignment of a Warranty Deed without proper transfer in an ordinary course of business of the Tangible Note that it secures is a LEGAL NULLITY by operation of law.").) Second, Plaintiff makes general allegations that the securitization of notes somehow makes the notes unenforceable or renders foreclosure illegal. (*See, e.g.*, *id.* ¶ 24 ("The Audit shows clearly that the Plaintiff's loan was SECURITIZED.").)

After a *de novo* review of the relevant case law, the Complaint, Plaintiff's filings, and Defendants' arguments, this Court, like the magistrate judge, finds that there is no legal foundation for Plaintiff's assertions, and thus for her entire Complaint. In light of the

magistrate judge's thorough and well-reasoned explanation of why these arguments have been rejected universally in Minnesota, this Court finds it unnecessary to include a duplicative analysis here. Instead, this Court explicitly incorporates by reference the magistrate judge's lengthy consideration of Plaintiff's arguments regarding securitization and the "show-me-the-note" theory. (R&R at 7–11.) This Court does, however, highlight a decision in which it explained why the arguments that Plaintiff advances here fail as a matter of law. In *Peterson v. CitiMortgage, Inc.*, this Court explained that "[t]he Minnesota Supreme Court has explicitly found that '[Minnesota] case law establishes that a party can hold legal title to the security instrument without holding an interest in the promissory note.'" No. 11-cv-2385 (SRN/JJG), 2012 WL 1971138, at *4 (D. Minn. June 1, 2012) (second alteration in original) (quoting *Jackson v. Mortg. Elec. Reg. Sys., Inc.*, 770 N.W.2d 487, 500 (Minn. 2009)), *aff'd*, 704 F.3d 548 (8th Cir. 2013). Moreover, this Court explained, "the Eighth Circuit considered and rejected the argument that one who does not hold the note cannot foreclose under Minnesota law: 'the right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable, holder of the mortgage.'" *Id.* (quoting *Stein v. Chase Home Fin., LLC*, 662 F.3d 976, 980 (8th Cir. 2011)).

In that same decision, this Court also addressed securitization arguments similar to the one Plaintiff raises here. This Court noted:

> Plaintiffs' claim that the securitization of the notes somehow makes the notes unenforceable has no legal merit. First, the basis of Plaintiffs' theory is simply incorrect: there is no provision in the notes they signed that prevents the sale of the notes to other entities, and there is nothing in the fact that the notes were securitized that would prevent their enforcement. Moreover, Plaintiffs were not parties to the

pooling and servicing agreements by which their notes were pooled into mortgage-backed securities. They therefore do not have standing to challenge those agreements.

*Id.* (citing *Greene v. Home Loan Servs., Inc.*, No. 09-cv-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010)). The same considerations apply here. Accordingly, for the reasons articulated in *Peterson* and those explained by the magistrate judge, Counts I–III and VI–X must be dismissed with prejudice because they explicitly rely on Plaintiff's securitization and show-me-the-note arguments. *See id.* ("Absent some legal support for the idea that Defendants are not entitled to foreclose on their mortgages because they do not hold the original notes, Plaintiffs' claims for slander of title, breach of fiduciary duty, [and] fraud . . . must be dismissed.").

### 3. Count-Specific Reasons for Dismissal

In addition to finding that the vast majority of Plaintiff's claims must be dismissed because they are based on the legally-invalid securitization and show-me-the-note theories, this Court, like the magistrate judge, finds that there are independent reasons for dismissing Plaintiff's claims that are specific to each individual Count.

### a. Lack of Standing/Wrongful Foreclosure (Count I)

In her first "cause of action," Plaintiff alleges that "Defendant Does Not have Standing to Foreclose" and that "MERS Cannot be a Real Party in Interest in a Securitized Mortgage." (Compl. ¶¶ 2(2), 15(2).)[6] Plaintiff buttresses these contentions with the general allegations that Defendants "do not have an equitable right to foreclose on the [p]roperty

---

[6] This Court follows the magistrate judge's convention of denoting the Complaint's second set of consecutively numbered paragraphs with a "(2)." (*See* R&R at 3 n.1.)

because Defendant[s] . . . have failed to perfect any security interest in the [property]," and that "MERS lacks the authority under its corporate charter to foreclose a Warranty Deed, or to own or transfer an interest in a Tangible Note debt obligation because MERS charter limits MERS' powers and duties to functioning as an electronic registration system . . . ." (*Id.* ¶¶ 3(2), 6(2).)

These assertions do not state a cognizable claim under Minnesota law. Plaintiff's allegations mirror claims previously asserted in similar foreclosure actions and dismissed by this and other courts within this District. *See, e.g.*, *Peterson*, 2012 WL 1971138, at *2 (holding that "counts" asserting that defendants "Do Not Have Legal Standing to Foreclose Mortgages," "Are Not Real Parties in Interest," and that the "Mortgage [Is] Not Properly Perfected" did not raise claims under Minnesota law and should be dismissed without further discussion). Count I of Plaintiff's Complaint thus warrants dismissal for this independent reason.

### b. Fraud in the Concealment (Count II) & Fraud in the Inducement (Count III)

Plaintiff grounds her fraud claims on Defendants' purported failure to disclose that her loan was securitized and on their "misrepresentat[ions] that they are the 'holder and owner' of the Tangible Note and the beneficiary of the Warranty Deed" when in fact they are not. (Compl. ¶ 29(2); *see id.* ¶ 18(2) ("By concealing the securitization, the true character of the purported loan in this way had a materially negative effect on Plaintiff that was known by Defendant . . . but not disclosed.").) As described above, however, there is nothing inherently unlawful about securitization, and Plaintiff's show-me-the-note argument

is without legal merit. In addition, however, Counts II and III of Plaintiff's Complaint fail to meet the requirements of Rule 9(b), which mandates a heightened pleading standard for fraud-based claims. *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 783–84 (8th Cir. 2009). To satisfy Rule 9(b)'s particularity requirement, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 916–17 (8th Cir. 2014) (citation and internal quotation marks omitted). Here, Plaintiff's Complaint fails to "identify the who, what, where, when, and how of the alleged fraud," and thus must be dismissed for this reason as well. *Id.* at 917 (citation and internal quotation marks omitted).

### c. Unconscionable Contract (Count IV), Breach of Contract (Count V), & Breach of Fiduciary Duty (Count VI)

In support of her unconscionable contract claim, Plaintiff alleges that CitiMortgage "knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage," which CitiMortgage "intended to exploit." (Compl. ¶¶ 41(2)–42(2).) In support of her breach of contract claim, Plaintiff simply states that CitiMortgage "failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Warranty Deed." (*Id.* ¶ 47(2).) For her breach of fiduciary claim, in turn, Plaintiff makes several conclusory allegations, including that CitiMortgage is "acting not in the best interest of the grantor of the Warranty Deed [and] failed to adhere to their Fiduciary Duties." (*Id.* ¶ 53(2).)

17

There is a multiplicity of reasons why these three claims fail as a matter of law. For the sake of brevity, however, this Court will not recount every reason. It suffices to say here that Plaintiff's unconscionable contract claim fails because she makes absolutely no allegations that would support an argument that her contract was one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1041 (D. Minn. 2006) (quoting *In re Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987)). Moreover, as correctly found by the magistrate judge, this particular claim is clearly barred by the doctrine of *res judicata* and collateral estoppel based on *Baker I*. (*See* R&R at 13 n. 6.) Plaintiff's breach of contract claim also fails, as she does not dispute that she defaulted on her loan, and covenant 23 of her Mortgage—which requires the lender to discharge the security instrument—is only triggered when the loan is fully paid. (*See* Mortgage ¶ 23.) Finally, Plaintiff's breach of fiduciary duty claim fails as a matter of law because, under the circumstances pled by Plaintiff, "banks have no duty to counsel customers, and lenders have no fiduciary duty toward borrowers." *Dunbar v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 839, 848 (D. Minn. 2012), *as amended on* Apr. 12, 2012, *aff'd*, 709 F.3d 1254 (8th Cir. 2013).

### d.    Quiet Title (Count VII) & Slander of Title (Count VIII)

In support of her quiet title claim, Plaintiff includes a host of conclusory allegations, including that "[t]he claims of all entities are without any legal right whatsoever, and Defendant[s] ha[ve] no estate, title, lien or interest in or to the Real Property . . . ." (Compl. ¶ 57(2).) In support of her slander of title claim, Plaintiff makes similarly bare assertions,

18

such as that "[t]he act of recording the purported October 28, 2011 Assignment of Warranty Deed into the Official Records of the Anoka County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title." (*Id.* ¶ 69(2).)

Like her breach of contract claim, Plaintiff's quiet title claim fails because Plaintiff does not dispute that she defaulted on her loan, which bars her from pursuing a quiet title claim. *Hood v. Fed. Home Loan Mortg. Corp.*, No. 13-cv-1068 (DSD/JSM), 2014 WL 1371916, at *11 (D. Minn. Apr. 8, 2014) ("Plaintiffs, having defaulted on their mortgage, come to court with unclean hands and are precluded from pursuing a quiet title claim.") Finally, Plaintiff's slander of title claim fails because it does not meet the heightened pleading requirements of Rule 9(b), *see, e.g.*, *id.* at *12 n.5 (citation omitted); because Plaintiff has not made any plausible allegation that Defendants acted with malice, an element of a slander of title claim, *see, e.g.*, *id.* at *11; and because Plaintiff has defaulted on her loan, *id.* at *12. In sum, for these reasons as well as those well articulated by the magistrate judge, (*see* R&R at 14–16), Counts VII and VIII fail as a matter of law and must be dismissed.

### e.    Temporary Restraining Order and for Injunctive Relief (Count IX), Declaratory Relief (Count X), & Intentional Infliction of Emotional Distress (Count XI)

In her ninth and tenth Counts, Plaintiff asks that this Court enter a temporary restraining order and order injunctive and declaratory relief. (*See* Compl. ¶¶ 70(2)–79(2).) As correctly found by the magistrate judge, because the substantive claims in Plaintiff's Complaint are dismissed for failure to state a claim, Plaintiff is "[is] left with a remedy in

search of right." *Wolff v. Bank of N.Y. Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014) (quoting *Scanlon v. Nw. Mortg., Inc.*, No. 11-cv-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012)). Counts IX and X are thus dismissed.

Moreover, Count XI—intentional infliction of emotional distress—is dismissed as well, as Plaintiff's Complaint, at a minimum, does not allege any conduct that rises to the "extreme and outrageous" level required to plead this claim. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983).

### 4. Request for Discovery

Finally, this Court briefly addresses Plaintiff's contention that she is entitled to discovery so she can properly pursue her claims. Unfortunately, Plaintiff grounds her request for discovery on the same legally-unfounded securitization and "show-me-the-note" theories. (*See, e.g.*, Pl.'s Resp. at 21.) No amount of discovery will help Plaintiff overcome this legally-deficient foundation of her claims. This Court is dismissing the Complaint for legal, not factual reasons. And significantly,

> A plaintiff's expression of the hope that, if [s]he were allowed to take discovery, something might turn up that would support one of h[er] claims is not a sufficient basis for overcoming a motion to dismiss. If it were, Rule 12(b)(6) motions would rarely be granted, as any plaintiff in any case can argue that, if [s]he is allowed to take discovery, [s]he might find something helpful. The law demands more of plaintiffs.

*Triemert v. Wash. Cty.*, No. 13-cv-1312 (PJS/JSM), 2013 WL 6729260, at *1 (D. Minn. Dec. 19, 2013), *aff'd*, 571 F. App'x 509 (8th Cir. 2014). In sum, after conducting a *de novo* review, this Court agrees with the magistrate judge that Plaintiff's Complaint must be dismissed.

III.    **ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  The Clerk of Court is **DIRECTED** to **VACATE** both the January 10, 2018, Order adopting the R&R [Doc. No. 35] and the Judgment [Doc. No. 36];

2.  Plaintiff's Objection to the R&R filed on January 11, 2018 [Doc. No. 37] and February 13, 2018 [Doc. No. 39] are **OVERRULED**;

3.  Magistrate Judge Menendez's R&R of December 21, 2017 [Doc. No. 34] is **ADOPTED**;

4.  Defendants' Motion to Dismiss [Doc. No. 20] is **GRANTED**; and

5.  This action is **DISMISSED with prejudice** in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 18, 2018                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge

21